# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

### Case No. _____

JERELYN ZACHE, CHIQUITA
BREWTON for herself and o/b/o minor
A.B., JEANINE CADY, JULIE COOMER,
LORI FARRINGTON, STEPHANIE
GOMEZ, JENNIFER LUFFMAN,
JESSICA MCCONNAUGHEY, ELEANOR
PEETE, and CARL PRATHER, for
themselves and on behalf of all others
similarly situated,

       *Plaintiffs*,

    v.

THE 3M COMPANY (f/k/a Minnesota
Mining and Manufacturing, Co.); TYCO
FIRE PRODUCTS L.P., as successor-in-
interest to THE ANSUL COMPANY;
BUCKEYE FIRE EQUIPMENT CO.;
CHEMGUARD, INC.; NATIONAL FOAM,
INC.; KIDDE FIRE FIGHTING, INC. (f/k/a
CHUBB NATIONAL FOAM, INC. and
NATIONAL FOAM, INC.), individually
and as successor in interest to NATIONAL
FOAM, INC.; KIDDE PLC, INC. (f/k/a
WILLIAMS US INC. and WILLIAMS
HOLDINGS, INC.), individually and as
successor in interest to NATIONAL FOAM,
INC.; KIDDE FENWAL, INC. (f/k/a
FENWAL INC.), individually and as
successor-in-interest to NATIONAL
FOAM, INC.; UTC FIRE & SECURITY
AMERICAS CORPORATION, INC. (f/k/a
GE INTERLOGIX, INC.), individually and

as successor-in-interest to NATIONAL
FOAM, INC.; FLORIDA STATE FIRE
COLLEGE; and COLLEGE OF CENTRAL
FLORIDA,

        *Defendants*.

_____/

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1442(a)(1), 1446, and 1453, from the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, to the United States District Court for the Middle District of Florida.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status, and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.    Plaintiffs are individuals who seek to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF"), which Plaintiffs allege has caused contamination and their current (and future) personal injuries.

2. Specifically, Plaintiffs allege that Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that through the use of these substances in AFFF Plaintiffs were exposed to these substances through their drinking water, which in turn caused Plaintiffs to develop certain diseases and undergo medical monitoring to detect potential future diseases. Plaintiffs allege that these substances have contaminated the property and water supplies at and around the College of Central Florida (the "College") in Ocala, Florida, which has diminished the value of the properties and will necessitate property remediation. Plaintiffs are individuals who attended, visited, worked at, and/or lived near the College. (ECF No. 1-1, Complaint ¶ 4).

3. Plaintiffs purport to bring this case as a class action on behalf of multiple putative classes seeking damages for their personal injuries, medical monitoring, and property damage. (*Id.* ¶¶ 202-03, 205).

4. At least some of the AFFF that gives rise to Plaintiffs' claims has been manufactured by a select group of suppliers (including Tyco) for the military, which must be done in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988), Tyco claims immunity from tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for

the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810-15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

5.     Removal of this action also is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The CAFA "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)). U.S. 588, 592 (2013) (quoting 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)).

## BACKGROUND

6.     The Complaint in this action was filed on May 23, 2025, in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, bearing Case No. 2025-CA-001065. Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(b) and 1441(a) because Marion County, Florida, is located within the Middle District of Florida.

7.     Chemguard, Inc. was served with the Summons and Complaint in this action on September 30, 2025.  This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

8.     In accordance with 28 U.S.C. § 1446(a), Tyco is filing with this Notice of Removal copies of all process, pleadings, orders, and other papers on file in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida.  (ECF No. 1-1; ECF No. 1-2).

9.     Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008); *Linden v. Chase Manhattan Corp.*, No. 99 CIV. 3970(LLS), 1999 WL 518836, at *1-2 (S.D.N.Y. July 21, 1999).  Nor is the consent of other Defendants required to remove the action under CAFA.  28 U.S.C. § 1453(b) (". . . [an] action may be removed by any defendant without the consent of all defendants.").

10.     Plaintiffs generally allege that Defendants, including Tyco, have designed, manufactured, marketed, sold, and/or distributed AFFF products, which contain PFAS.  (ECF No. 1-1, Compl. ¶¶ 10-11, 59-62, 65-67).  Plaintiffs claim that the use of AFFF caused personal injury to Plaintiffs, contamination of Plaintiffs' water supplies, and contamination of Plaintiffs' property.  (*Id.* ¶¶ 1, 10-12, 14-20,

25-54).   Plaintiffs further claim that they have incurred and will incur costs associated with testing and monitoring for PFAS, including treatment, remediation, removal, and disposal of AFFF contamination.  (*Id.* ¶¶ 19-20, 24, 274, 286-97, 299-308).

11.     Plaintiffs seek to recover costs and damages associated with the alleged personal injuries, medical monitoring, and property damage.  (*Id.* ¶¶ 262, 284, 297, 308; Prayer for Relief at 78).   In addition, Plaintiffs seek punitive damages, consequential damages, and pre- and post-judgment interest.  (*Id.* ¶¶ 310-12; Prayer for Relief at 78-79).

12.     Plaintiffs assert claims against all Defendants for negligence and gross negligence (*Id.* ¶¶ 218-262), strict liability (*Id.* ¶¶ 263-284), medical monitoring (*id.* ¶¶ 285-297), contaminated property mitigation, remediation, testing, and monitoring (*Id.* ¶¶ 298-308), and punitive damages (*Id.* ¶¶ 309-312).

13.     Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case. Tyco is also filing a copy of this Notice of Removal with the Clerk of the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida.

14.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of

all Defendants to assert any defenses and/or objections to which they may be entitled.

15.     Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

16.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense.  *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

17.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a).  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum

7

for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citations omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see also Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original; internal quotation marks omitted).

18.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiffs' injuries are caused at least in part by AFFF supplied to the military, also known as MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3-4 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, No. 18-cv-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also ruled on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that the plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3-6; *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019)

("MDL Order 2"), at 3-5; *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 2-6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.     **MilSpec AFFF**

19.     The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, train its personnel, save lives, and protect property. Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF was also widely used to fight fires at larger civilian airports, known as "Part

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

139" airports.  The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

20.    The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where

---

[3]  U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4]  The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5]  Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6]  Id. at 2.

such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.[7]

21.    From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement was in force for virtually the entire period of time at issue in the Complaint. In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants. Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[8] Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to eliminate PFOA and PFOS completely "while still meeting all other military specification requirements."[9]

---

[7] *Id.* at 2, 4, 8.

[8] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), *supra* n.4.

[9] *Id.* § 6.6 ("The DoD's goal is to acquire and use a non-fluorinated AFFF formulation or equivalent firefighting agent to meet the performance requirements for DoD critical firefighting needs. The DoD is funding research to this end, but a viable solution may not be found for several years. In the short term, the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA."), *supra* n.4.

22.     MilSpec AFFF has been widely used at military bases and civilian airports and by civilian fire departments.  All MilSpec AFFF is military equipment and must be manufactured and labeled in accordance with military specifications, regardless of whether the product is ultimately used in a military or civilian setting. Plaintiffs' claims arise in part from the use of MilSpec AFFF.  Ocala International Airport (the "Airport") is a Part 139 airport that is required to use MilSpec AFFF and has used such AFFF, including MilSpec AFFF manufactured by Tyco.  The Airport is located near the College, and PFAS derived from MilSpec AFFF has affected the College and nearby properties.

23.     As the MDL Court has noted, AFFF manufacturers have consistently maintained that PFAS from MilSpec AFFF and other PFAS-containing products were inextricably linked, "a theory that, if credited, holds sufficient water to substantiate federal officer removal." *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG, ECF No. 7891 (D.S.C. Aug. 22, 2025) (quotation omitted), at 2. "Accordingly and based on the MDL Court's knowledge and experience managing this MDL, the Court finds that there exists, at the very least, a plausible basis for alleging federal jurisdiction sufficient to satisfy [defendants'] initial burden on a notice of removal." *Id.*

### B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied

#### 1.    The "Person" Requirement Is Satisfied.

24.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation respectively) meet the definition of "person[s]" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships[.]" *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135-36.

#### 2.    The "Acting Under" Requirement Is Satisfied.

25.    The second requirement—"acting under" a federal officer—is satisfied when an entity assists, or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812.  The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal."  *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*."  *Id.* (emphasis in original).

26.    The requirement of "acting under" a federal officer is met here because the effect of Plaintiffs' claims, at least in part, is to challenge Tyco's alleged conduct

in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have had to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members) (internal quotation marks omitted); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[10] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same); *see also* MDL Order 1 at 4 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2 at 3-5 (holding likewise in case involving MilSpec AFFF used at Part 139

---

[10] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

airport); MDL Order 3, at 3-6 (same). If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have had to manufacture and supply the product itself.

27. In designing, manufacturing, and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[11]

### 3. The "Under Color Of Federal Office" Requirement Is Satisfied.

28. The third requirement, that the lawsuit is one "for or relating to" the defendant's actions taken under color of federal office, is satisfied when there is a "connection or association" between the lawsuit and the defendant's actions under federal authority. *Papp*, 842 F.3d at 813. As with the "acting under" requirement,

---

[11] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

"[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[12]

Courts credit Defendants' theory of the case when determining whether a connection

exists. *Isaacson*, 517 F.3d at 137. The required connection or association may arise

from a defense to plaintiff's claims. *See Nessel*, 2021 WL 744683, at *3 (noting that

"Plaintiffs cannot decide what defense Defendants might present").

29.     Here, Plaintiffs allege the use of PFAS in AFFF sold by Defendants

(including Tyco) to be a source of their injuries. Tyco contends that some of this

AFFF was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required

by military specifications. As a result, Plaintiffs' claims against Tyco are connected

to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9

("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and

the design and manufacture of AFFF for the government."); MDL Order 1 at 5-6

(element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that

it claims Tyco manufactured and sold, and for which the U.S. military imposes

MilSpec standards."); MDL Order 2 at 5 (element satisfied where AFFF products,

"for which the military imposes MilSpec standards," were the alleged cause of

plaintiffs' injuries); MDL Order 3 at 5-6 (same).

---

[12] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

30.    As averred in the Complaint and this Notice of Removal, the injuries alleged in the Complaint arise at least in part from MilSpec AFFF.  Accordingly, the claims here are "for or relating to" Tyco's actions under color of federal office.  28 U.S.C. § 1442(a)(1).

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied.

31.    The fourth requirement—"colorable federal defense"—is satisfied by Tyco's assertion of the government contractor defense.

32.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original; citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-*

*Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original; citation omitted).

33. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

34. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the

18

product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[13] Those specifications were "reasonably precise" in requiring the use of PFAS. As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, the DoD purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of [PFAS]-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

---

[13] *See* MIL-F-24385 (1969) and subsequent revisions and amendments, *supra* n.4.

35.     With respect to the second requirement, Tyco's products appeared on the DoD Qualified Products List,[14] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1 at 5 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

36.     Regarding the third requirement, for removal purposes, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, the United States long understood that AFFF contained PFAS and could contain or break down into PFOS and/or PFOA; that AFFF constituents could migrate through the soil and potentially reach groundwater; and that it had been reported that this may

---

[14] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

raise environmental or human health issues.[15]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[16]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires[.]"[17]  Indeed, even today Naval Sea Systems

---

[15] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[16] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients*, Georgia Institute of Technology 1 (Oct. 1980), https://apps.dtic.mil/sti/tr/pdf/ADA136612.pdf.

[17] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

21

Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[18]   If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required.  *See Ayo*, 2018 WL 4781145, at *14; MDL Order 1 at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

37.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90, 92-97 (2d Cir. 2008).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange"*

---

[18]     *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

*Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *10, 12-13.

38.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiffs that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

39.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial.  *See In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022).  A defense that presents triable issues is by definition better than merely "colorable."

40.     To the extent that Plaintiffs' injuries may have been caused by PFAS derived from any non-MilSpec AFFF, PFAS derived from MilSpec AFFF nevertheless is or was inseparably and indivisibly commingled with PFAS derived from non-MilSpec AFFF, therefore contributing to any alleged injuries that Plaintiffs claim to have sustained.  Thus, the government contractor defense is necessarily implicated regardless of the type of AFFF that Plaintiffs may identify as the source of their alleged injuries.

## REMOVAL IS ALSO PROPER UNDER THE
## CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1332(d)

41.     Plaintiffs style their complaint as a "Class Action Complaint with Individual Claims." (ECF No. 1-1, Compl. at 1, 4).  They purport to bring this lawsuit as a class action on their own behalf and on behalf of all others similarly situated. *Id.*  Accordingly, this case is a "class action" within the meaning of the CAFA because it is brought "under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

42.     Removal of this action is proper pursuant to CAFA because "the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000."  *Standard Fire*, 568 U.S. at 592 (internal quotation marks and citation omitted).

### A.     The Numerosity Requirement Is Satisfied.

43.     Plaintiffs explicitly allege that the number of putative class members is "in the hundreds if not thousands."  (ECF No. 1-1, Compl. ¶ 209).

44.     Accordingly, this action satisfies the requirement for removal that "the number of members of all proposed plaintiff classes in the aggregate" is equal to or greater than 100.  28 U.S.C. § 1332(d)(5)(B).

**B.** <u>**The Minimal Diversity Requirement Is Satisfied.**</u>

45.    The minimal diversity requirement under CAFA is satisfied where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

46.    Moreover, under CAFA, this action "may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought."  28 U.S.C. § 1453(b).

47.    The Complaint alleges that named Plaintiffs are residents of Florida. (ECF No. 1-1, Compl. ¶¶ 25, 28, 31, 34, 37, 40, 43, 46, 49).   Thus, at least one of the named Plaintiffs or putative class members is a citizen of Florida.

48.    The Complaint alleges that Defendant Chemguard, Inc. is a Texas Corporation. (*Id.* ¶ 65). It also alleges that Tyco Fire Products, L.P. is a Delaware limited partnership with its principal place of business located in Wisconsin.  (*Id.* ¶ 59).

49.    Accordingly,  there  is  minimal  diversity  under  28  U.S.C. § 1332(d)(2)(A) because "any member of a class of plaintiffs is a citizen of a State different from any defendant."

## C.     <u>The Amount In Controversy Requirement Is Satisfied.</u>

50.     Under CAFA, the amount in controversy must exceed five million dollars ($5,000,000), exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In a putative class action, the amount in controversy is determined by aggregating the claims of all members of the putative classes. U.S.C. § 1332(d)(6). The Supreme Court has made clear that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 571 U.S. 81, 89 (2014). Moreover, in "actions seeking declaratory and injunctive relief, it is well established that the amount in controversy" may be "measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). And in addition to "compensatory damages," a court "must also consider" both "punitive damages" and "attorney's fees" "when calculating the amount in controversy" under CAFA. *Frederico v. Home Depot*, 507 F.3d 188, 198-99 (3d Cir. 2007).

51.     The amount in controversy in this action exceeds five million dollars ($5,000,000) in the aggregate, exclusive of interest and costs. According to the Complaint, "Plaintiffs and Class Members seek additional damages from the Defendants, including an order requiring them to fund a soil, water and environmental mitigation and/or remediation program to be created, supervised, and

26

implemented by the court in equity."  (ECF No. 1-1, Compl. ¶ 308.)    Such action could include additional testing and monitoring for PFAS, as well as planning, designing, and implementing the remedial actions necessary to remove these chemicals from land, soil, surface water, and/or groundwater.  Plaintiffs also seek consequential damages and punitive damages totaling Ten Billion Dollars ($10,000,000,000).  (*Id.* at 77-78).

52.    Given Plaintiffs' Prayer for Relief, the size of the putative class, and the breadth of relief sought, the aggregate amount in controversy is greater than five million dollars ($5,000,000), exclusive of interest and costs.

53.    Accordingly, although Tyco denies that Plaintiffs or any putative class members are entitled to recover any amount or relief sought, the amount in controversy requirement for removal under CAFA is satisfied.

54.    Because the numerosity, minimal diversity, and amount in controversy requirements of CAFA are satisfied, this case is removable to federal court under CAFA.

WHEREFORE, Tyco hereby removes this action from the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, to this Court.

RESPECTFULLY SUBMITTED this 15th day of October, 2025.

By:   */s/ Michael D. Sloan*
      Michael D. Sloan (FBN 104385)
      msloan@carltonfields.com
      **CARLTON FIELDS, P.A.**
      CityPlace Tower
      525 Okeechobee Blvd., Ste. 1200
      West Palm Beach, Florida 33401
      Tel.: (561) 822-2979
      Fax: (561) 659-7368

      *Counsel for Defendant Tyco Fire*
      *Product LP and Chemguard, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that copies of the foregoing **NOTICE OF REMOVAL**, with its attachments,  were served on all parties on the attached Service List, in the manner specified therein, on October 15, 2025.

*/s/ Michael D. Sloan*
Michael D. Sloan

## SERVICE LIST

| | |
|---|---|
| Orestes "Rusty" Perez, Esq.<br>P.O. Box 840638<br>Pembroke Pines, FL 33084<br>Tel: (954) 210-7752<br>rustyperezlaw@gmail.com<br>*Counsel for Plaintiffs*<br><u>Served via E-mail</u> | John B. Agnetti<br>Michael Reyes Triana<br>HOFFMAN, LARIN & AGNETTI, P.A.<br>909 North Miami Beach Blvd., Suite 201<br>Miami, FL 33162<br>Tel: (305) 653-5555<br>pleadings@hlalaw.com<br>*Counsel for Plaintiffs*<br><u>Served via E-mail</u> |
| Daniel L. Ring<br>Tyler D. Alfermann<br>JENNER & BLOCK<br>353 N. Clark Street<br>Chicago, IL 60654<br>Tel: (312) 284-7403<br>dring@jenner.com<br>talfermann@jenner,com<br>*Counsel for Defendant 3M Company*<br><u>Served via E-mail</u> | Jonathan I. Handler<br>Keith H. Bensten<br>DAY PITNEY LLP<br>One Federal Street, 29th Floor<br>Boston, MA 02110<br>Tel: (617) 345-4600<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>*Counsel for Defendant Kidde-Fenwal Inc., Kidde Fire Fighting, Inc., Kidde PLC Inc., UTC Fire & Security Americas Corporation, Inc.*<br><u>Served via E-mail</u> |
| Michael L. Carpenter<br>GRAY LAYTON KERSH SOLOMON<br>FURR & SMITH, P.A.<br>516 S. New Hope Road<br>Gastonia, NC 28054<br>Tel: (704) 865-4400<br>mcarpenter@gastonlegal.com<br>*Counsel for Defendant Buckeye Fire Equipment Company*<br><u>Served via E-mail</u> | Keith E. Smith<br>GREENBERG TRAURIG, LLP<br>1717 Arch Street, Suite 400<br>Philadelphia, PA 19103<br>Tel: (215) 988-7800<br>smithkei@gtlaw.com<br>*Counsel for Defendant National Foam Inc.*<br><u>Served via E-mail</u> |

| | |
|---|---|
| Fred Roberts, Jr.<br>KLEIN & KLEIN, LLC<br>40 SE 11th Avenue<br>Ocala, FL 34471<br>Tel.: (352) 732-7750<br>fred@kleinandkleinpa.com<br>*Counsel for Defendant College of Central Florida*<br><u>Served via E-mail</u> | Florida State Fire College<br>c/o Florida Department of Financial Services, Office of General Counsel<br>200 E. Gaines Street<br>Tallahassee, FL 32399<br>Tel.: (850) 413-4307<br>ann.rozycki-fierro@myfloridacfo.com<br>*Counsel for Defendant Florida State Fire College*<br><u>Served via E-mail</u> |